UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STATE OF LOUISIANA, EX REL JAMES D. "BUDDY" CALDWELL, ATTORNEY GENERAL | * | CIVIL ACTION NO. 14-550 |
| | * | JUDGE SHELLY D. DICK |
| | * | |
| | * | |
| Plaintiff, | * | MAGISTRATE JUDGE STEPHEN C. RIEDLINGER |
| | * | |
| VERSUS | * | |
| | * | |
| STATE FARM FIRE AND CASUALTY COMPANY, STATE FARM GENERAL INSURANCE COMPANY, AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT STATE FARM'S ANSWER AND AFFIRMATIVE DEFENSES TO PETITION FOR INJUNCTIVE RELIEF AND RESTITUTION

State Farm Fire and Casualty Company ("State Farm Fire"), State Farm General Insurance Company ("State Farm General"), and State Farm Mutual Automobile Insurance Company ("State Farm Auto") (collectively "State Farm"), hereby answer the Petition for Injunctive Relief and Restitution filed by Plaintiff (the "Petition"):

## JURY DEMAND

State Farm demands trial by jury of all issues in this action so triable.

## ANSWER TO THE PETITION

State Farm answers each of the numbered paragraphs of the Petition as follows.

Any allegation that is not admitted in the following paragraphs of this section is denied.

1.      This action is brought in the public interest to seek injunctive relief, restitution, and civil penalties against Defendants State Farm Fire and Casualty Company, State Farm General Insurance Company, and State Farm Mutual Automobile Insurance Company (collectively referred to herein as "State Farm") from engaging in conduct, activities, or proposed actions in violation of the Louisiana Unfair Trade Practices Act, LSA-R.S. 51:1401 et seq. and of the Monopolies Law, LSA-R.S. 51:121 et seq.

**ANSWER:**    State Farm avers that paragraph 1 requires no responsive pleading.  To the extent that a response is deemed to be required, State Farm denies that it engaged in conduct, activities, or proposed actions in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 *et seq.* and/or of the Louisiana Monopolies Act, LSA-R.S. 51:121 *et seq.*  State Farm denies the remaining allegations of paragraph 1 for lack of knowledge or information sufficient to form a belief as to the truth therein.


2.      Defendant State Farm Fire and Casualty Company is registered with the Louisiana Department of Insurance as a Louisiana insurance company licensed to do business in the state, and is doing business in the state of Louisiana.

**ANSWER:**    State Farm Fire admits that it is registered with the Louisiana Department of Insurance, that it is licensed to do business in Louisiana, and that it is doing business in Louisiana, but denies each of the remaining allegations of paragraph 2.


3.      Defendant State Farm General Insurance Company is registered with the Louisiana Department of Insurance as a Louisiana insurance company licensed to do business in the state, and is doing business in the state of Louisiana.

**ANSWER:**    State Farm General admits that it is registered with the Louisiana Department of Insurance, that it is licensed to do business in Louisiana, and that it is doing business in Louisiana, but denies each of the remaining allegations of paragraph 3.  State Farm General avers that it does not write automobile insurance nor engage in automobile claims adjusting in Louisiana.

1167496v.8

4.    Defendant State Farm Mutual Automobile General Insurance Company is registered with the Louisiana Department of Insurance as a Louisiana insurance company licensed to do business in the state, and is doing business in the state of Louisiana.

**ANSWER:**    State Farm Auto admits that it is registered with the Louisiana Department of Insurance, that it is licensed to do business in Louisiana, and that it is doing business in Louisiana, but denies each of the remaining allegations of paragraph 4.

5.    In 2012, Defendant State Farm Mutual Automobile Insurance Company wrote 33.63% of the private passenger and commercial automobile liability and physical damage policies in the state of Louisiana for a total of $1,020,766,673 in premiums.

**ANSWER:**    State Farm denies the accuracy of the numbers contained in the allegations of paragraph 5.   State Farm admits that the value of premiums for private passenger and commercial automobile liability and physical damage policies written by State Farm Auto in 2012 in Louisiana exceeded $1.020 billion.   State Farm denies the remaining allegations for lack of knowledge.

6.    Defendants are subject to the jurisdiction of this court pursuant to LSA R.S. 51:1418(A).

**ANSWER:**    State Farm denies that it violated any provision of the Louisiana Unfair Trade Practices and Consumer Protection Law.   However, solely for the purpose of this litigation, State Farm admits that it is subject to jurisdiction in East Baton Rouge Parish, Louisiana.   State Farm further avers that this action is subject to the jurisdiction of the United States District Court for the Middle District of Louisiana pursuant to 28 U.S.C. §§ 1331 and 1337.   State Farm denies any remaining allegations of paragraph 6.

7.    Venue is proper before this court pursuant to LSA R.S. 51:1407.

1167496v.8

**ANSWER:**   State Farm denies that it violated any provision of the Louisiana Unfair Trade Practices and Consumer Protection Law.  However, solely for the purpose of this litigation, State Farm admits that venue in East Baton Rouge Parish, Louisiana, would be proper if this proceeding were in Louisiana state court.  State Farm further avers that venue is proper before the United States District Court for the Middle District of Louisiana pursuant to 28 U.S.C. §§ 1441 and 1446, and 15 U.S.C. § 4.  State Farm denies any remaining allegations of paragraph 7.

8.      Pursuant to LSA-R.S. 51:1405, unfair methods of competition and unfair or deceptive acts and practices in the conduct of any trade or business are unlawful.

**ANSWER:**   State Farm admits the existence of La. R.S. 51:1405 but denies that the statute applies to any actions by State Farm.  State Farm denies any remaining allegations of paragraph 8.

9.      Pursuant to LSA-R.S. 51:1407, whenever the Attorney General has reason to believe that someone is violating, or is about to violate, the Louisiana Unfair Trade Practices Act, he may bring an action to enjoin the conduct and seek injunctive relief, and may include restitution to remedy the unfair and deceptive acts as well as civil penalties.  Such restraining orders or injunctions shall be issued without bond.

**ANSWER:**   State Farm admits the existence of La. R.S. 51:1407 but denies that the statute applies to any actions by State Farm.  Moreover, State Farm denies that the Louisiana Attorney General has standing or authority to maintain claims against State Farm under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA").  *See* La. R.S. 51:1406(1). State Farm denies any remaining allegations of paragraph 9.

10.     Pursuant to LSA-R.S. 51:122, every contract or conspiracy in restraint of trade or commerce in this state is illegal.

**ANSWER:** State Farm admits the existence of La. R.S. 51:122 but denies that State Farm has engaged in any illegal contract or conspiracy in restraint of trade or commerce. State Farm denies any remaining allegations of paragraph 10.

11. Pursuant to LSA-R.S. 51:123, no person shall monopolize or attempt, combine or conspire with another to monopolize any part of trade or commerce within this state.

**ANSWER:** State Farm admits the existence of La. R.S. 51:123 but denies that State Farm has engaged in any conduct in violation of that statute. State Farm denies any remaining allegations of paragraph 11.

12. Pursuant to LSA-R.S. 51:128, the Attorney General may bring suit in district court to prevent or restrain any violation of the Monopolies Law, LSA-R.S. 51:121 *et seq*.

**ANSWER:** State Farm admits the existence of La. R.S. 51:128 but denies that State Farm has engaged in any conduct that violates the cited statutes. State Farm denies any remaining allegations of paragraph 12.

13. In 1963 the United States Department of Justice filed a complaint and entered into a consent decree with three defendant trade associations, whose members constituted the vast majority of insurers in existence at the time. [*See* Appendix A].

**ANSWER:** State Farm admits that the Department of Justice filed a complaint and entered into a consent decree in 1963 but states that State Farm was not a party to that complaint or to the consent decree nor a member of any of the trade association defendants named therein or a related entity. State Farm lacks knowledge sufficient to form a belief in the truth of the remaining allegations in paragraph 13 and therefore denies such allegations.

14. The complaint alleged that through the defendant trade associations and related committees, automobile property insurers conspired to "depress and control automobile material damage repair costs." [Appendix A, p. 8, para. 17].

**ANSWER:**    State Farm avers that the referenced complaint is the best evidence of its contents and further avers that the complaint confined its allegations to those automobile property insurers who were members of the trade associations named as defendants therein and related entities. State Farm was not a party to that complaint nor a member of any of the trade association defendants named therein nor a related entity.  State Farm lacks knowledge sufficient to form a belief in the truth of the remaining allegations in paragraph 14 and therefore denies such allegations.

15.    The complaint described a system by which appraisers were controlled by defendants and related entities, and forced to follow a plan that strived to (1) repair rather than replace damaged parts; (2) replace damaged parts by used rather than new parts; (3) obtain discounts on new replacement parts; (4) establish strict labor time allowances by the sponsored appraisers; and (5) obtain the lowest possible hourly rate.  [Appendix A, p. 9, para. 19].

**ANSWER:**    State Farm avers that the referenced complaint is the best evidence of its contents and otherwise denies the attempt in paragraph 15 to characterize its contents. State Farm was not a party to that complaint nor a member of any of the trade association defendants named therein nor a related entity. State Farm lacks knowledge sufficient to form a belief in the truth of the remaining allegations in paragraph 15 and therefore denies such allegations.

16.    Furthermore, appraisers were required to enlist a number of repair shops who would agree to make automobile material damage repairs based upon the appraiser's estimate and to steer repairs towards those shops who would agree to such practices. [Appendix A, p. 9, para. 20].

**ANSWER:**    State Farm avers that the referenced complaint is the best evidence of its contents. State Farm was not a party to that complaint nor a member of any of the trade association defendants named therein nor a related entity. State Farm lacks knowledge sufficient to form a

belief in the truth of the remaining allegations in paragraph 16 and therefore denies such allegations.

17.     Pursuant to those allegations, defendants entered into a consent decree with the United States Department of Justice for violations of Section 1 and 3 of the Sherman Act.  Under the consent decree, defendants were ordered to terminate their established plans to control the automobile material damage repair industry and depress its related costs, and were enjoined from placing into practice any future plans or programs which would have those effects.  [Appendix B, p. 2].

**ANSWER:**     State Farm admits that the Department of Justice entered into a consent decree with certain trade association defendants named therein and avers that the referenced consent decree is the best evidence of its contents.  State Farm was not a party to that decree nor a member of any of the trade association defendants named therein nor a related entity. State Farm lacks knowledge sufficient to form a belief in the truth of the remaining allegations in paragraph 16 and therefore denies such allegations.

18.     In contrast with practices in 1963, State Farm and most other current-day insurance companies directly employ their own claims adjusters and damage appraisers, obviating the need for a specific plan or system through which to exert control upon those facets of the automobile material repair process.

**ANSWER:**     State Farm Auto and State Farm Fire admit that they employ their own claims adjusters and damage appraisers.  State Farm General denies the allegations of paragraph 18 and avers that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana. State Farm denies the remaining allegations of paragraph 18.

19.     Most current-day insurance companies, including State Farm, utilize collision repair estimation software programs and databases, such as ADP, CCC and Mitchell.  These repair estimation databases generate standardized labor times and materials.

**ANSWER:**   State Farm Auto and State Farm Fire admit that they use computer software and databases to assist their personnel in estimating automobile collision repair costs.   State Farm General denies the allegations of paragraph 19 and avers that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana.   State Farm lacks knowledge or information sufficient to form a belief as to the practices of other insurance companies.   State Farm denies the remaining allegations of paragraph 19.

20.    Most current-day insurance companies, including State Farm, utilize programs commonly known as "direct repair programs," or DRPs.   In a DRP, automobile repairers enter into contracts with insurers in order to be placed upon a list of preferred repair providers recommended by the insurance company.

**ANSWER:**    State Farm Auto and State Farm Fire admit that certain collision repair facilities enter into voluntary agreements with State Farm called the State Farm Select Service Agreement. State Farm offers a list of participating repair shops based on geographic zip codes to customers who do not have a preexisting personal choice of repair facility.   State Farm General denies the allegations of paragraph 20 and avers that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana.   State Farm lacks knowledge or information sufficient to form a belief as to the practices of other insurance companies.   State Farm denies the remaining allegations of paragraph 20.

21.    Together, these factors — total control of adjusters and appraisers, utilization of software to generate standard labor times and rates, and implementation of DRPs — create an environment in the automobile collision repair industry that is nearly identical in practice to that which led to the 1963 Consent Decree.

**ANSWER:**    State Farm denies the allegations of paragraph 21.

22.     State Farm utilizes a program called "Select Service," and the participating repairers enter into a "Select Service Agreement" in order to be placed upon State Farm's list of preferred and/or recommended repair shops.

**ANSWER:**     State Farm Auto and State Farm Fire admit that they enter into voluntary, at-will agreements with qualified vehicle repair facilities that choose to participate in Select Service. State Farm General denies the allegations of paragraph 22 and avers that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana. State Farm denies the remaining allegations of paragraph 22.

23.     Pursuant to the "Select Service Agreement," participating repair shops are required to engage in certain pricing structures dictated by State Farm for parts and labor rates.

**ANSWER:**     State Farm denies the allegations of paragraph 23, and avers that its State Farm Select Service Agreement is the best evidence of its terms and conditions.

24.     State Farm purports to use a survey process to determine recent and/or market labor rates.

**ANSWER:**     State Farm Auto and State Farm Fire admit that they survey vehicle repair facilities to determine the rates the shops charge State Farm for their services. State Farm General denies the allegations of paragraph 24 and avers that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana. State Farm denies all remaining allegations of paragraph 24.

25.     Upon information and belief, State Farm manipulates this survey process in a manner that artificially decreases the recent and/or market labor rates paid pursuant to the Select Service Agreement.

**ANSWER:**     State Farm denies the allegations of paragraph 25.

26.     Pursuant to the Select Service Agreement, State Farm's Select Service Providers are required to utilize an automated replacement parts locating service called Parts Trader.

**ANSWER:**    State Farm Auto and State Farm Fire admit that, pursuant to the Select Service Agreement, participating vehicle repair facilities that are located in certain geographic areas with adequate parts distribution networks are required to use PartsTrader to locate replacement parts. State Farm General denies the allegations of paragraph 26 and avers that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana.   State Farm denies the remaining allegations of paragraph 26.

27.    The Parts Trader software platform was developed for and funded by State Farm.

**ANSWER:**    State Farm admits that PartsTrader LLC developed a software application that facilitates quoting and ordering automobile parts and that PartsTrader LLC subsequently customized a version of its application at State Farm's request. A portion of the funding for that customization was provided by State Farm.   State Farm denies all remaining allegations of paragraph 27.

28.    The use of the Parts Trader software platform removes the ability of the repair facility to freely select replacement parts that are most appropriate for a specific repair.

**ANSWER:**    State Farm denies the allegations of paragraph 28.

29.    Upon information and belief, State Farm adjusters have become increasingly involved in the everyday tasks performed by repair facilities, including but not limited to locating specific replacement parts and mandating that repair facilities use the specific parts identified by the adjuster, even when the repair shop believes that such use is neither safe nor appropriate.

**ANSWER:**    State Farm denies the allegations of paragraph 29.

30.    The implementation of the Parts Trader program has given State Farm a platform through which to carefully monitor and control parts usage by participating repairers and has resulted in an increase in the practices described in paragraph 29.

1167496v.8

**ANSWER:**     State Farm denies the allegations of paragraph 30.

31.     Pursuant to the Select Service Agreement, State Farm requires participating repair facilities to limit their use of supplemental damage estimates and to restrict their estimate upload activity to an initial estimate and final repair bill whenever possible.

**ANSWER:**     State Farm denies the allegations of paragraph 31.

32.     Upon information and belief, such restriction unduly pressures participating repair facilities to forgo repairs that are visually imperceptible prior to the disassembly of the vehicle and the initial estimate, but which a prudent repair facility would deem necessary.

**ANSWER:**     State Farm denies the allegations of paragraph 32.

33.     Pursuant to the Select Service Agreement, State Farm may limit the number of participating repair facilities and may rate or index the facilities based on a variety of factors using any available data.

**ANSWER:**     State Farm Auto and State Farm Fire admit that they index participating vehicle

repair facilities, using multiple factors. State Farm General denies the allegations of paragraph 33

and avers that it does not write automobile policies nor participate in automobile claims adjusting

in Louisiana. State Farm denies the remaining allegations of paragraph 33.

34.     State Farm provides little or no explanation to participating facilities regarding their rank or index, which determines the order in which the facilities are recommended to consumers.

**ANSWER:**     State Farm denies the allegations of paragraph 34.

35.     Upon information and belief, State Farm has removed or demoted repair facilities who have no consumer complaints, no issues identified on their State Farm audits, and complete compliance with repair cycle times and efficiency requirements.

**ANSWER:**     State Farm denies the allegations of paragraph 35.

36.     Upon information and belief, the ranking system utilized by State Farm creates increased pressure upon participating repairers to adhere to repair standards that are dictated by

State Farm and are wholly based upon repair costs, rather than consumer safety and those safety and performance standards dictated by the vehicle manufacturers.

**ANSWER:**     State Farm denies the allegations of paragraph 36.

37.     Pursuant to the Select Service Agreement and similar DRP contracts, repair facilities bill directly to and are paid directly by the insurer for the repairs performed on a consumer's vehicle.

**ANSWER:**     State Farm Auto and State Farm Fire admit that, with the customer's prior authorization and as a convenience to the customer, participating Select Service vehicle repair facilities can bill amounts due in excess of the customer's deductible directly to State Farm Auto and State Farm Fire, and be paid directly by State Farm Auto and State Farm Fire.  State Farm General denies the allegations of paragraph 37 and avers that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana.  State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding other direct repair programs.

38.     As a result of this payment arrangement, the insurer provides the approval and/or authorization for the repairs, and customarily the individual consumer is not meaningfully informed regarding the types of repairs made and the types and/or quality of replacement parts used until the entire repair process is complete.

**ANSWER:**     State Farm Auto and State Farm Fire admit that they provide participating Select Service vehicle repair facilities with authorization to bill them directly for covered repairs described in estimates.  State Farm General denies the allegations of paragraph 38 and avers that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana. State Farm denies the remaining allegations of paragraph 38.

39.     Each automobile manufacturer publishes guidelines for the appropriate repair of its vehicles, including the types of replacement parts and specific repair processes that

should be used in order to make repairs that comply with the existing safety and performance standards associated with the vehicle.

**ANSWER:**    State Farm admits that many automobile manufacturers publish recommendations for vehicle repairs.  State Farm further avers that those published recommendations are the best evidence of their contents.  State Farm denies the remaining allegations of paragraph 39.

40.    Pursuant to the Select Service Agreement and similar DRP contracts, insurers are able to exert a great degree of influence over the specific repairs performed by participating repair facilities, including but not limited to mandating the use of specific used, recycled, or non-OEM replacement parts.

**ANSWER:**    State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 that relate to direct repair programs other than Select Service.  State Farm denies the remaining allegations of paragraph 40 as they pertain to State Farm and the Select Service Program.

41.    Upon information and belief, insurers exert specific influence and control over participating repair facilities which directly results in the performance of repairs and utilization of parts that do not adhere to the manufacturer guidelines for specific vehicles.

**ANSWER:**    State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 that relate to any insurance company other than State Farm. State Farm denies the allegations of paragraph 41 as they pertain to State Farm.

42.    The estimation software systems used by the insurers generate standardized repair times that are based upon repairs to undamaged vehicles, using only original equipment manufacturer ("OEM") parts.

**ANSWER:**    State Farm denies the allegations of paragraph 42, which is vague, ambiguous, and based on an erroneous premise.  Upon information and belief, the software systems do not estimate "repair" times.  Instead, the systems provide the standard times for the removal and

replacement, removal and installation, and refinishing of specific parts and do not purport to be an estimate of the time to repair collision damage parts.  For example, the Mitchell P-pages state in part "labor times shown in the guide…are for replacement with new, undamaged parts from the vehicle manufacturers on a new undamaged vehicle.  Any additional time needed for collision damage, access, alignment, pulls, non-original equipment, or used parts should be agreed upon by all parties."

43.    In practice, participating facilities perform repairs on damaged vehicles and are frequently required and/or pressured by the insurers to utilize used, recycled, or non-OEM replacement parts.

**ANSWER:**    State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 that relate to any insurance company other than State Farm.  State Farm denies the allegations of paragraph 43 as they pertain to State Farm.

44.    The actual time required by a repair facility to complete a necessary repair frequently exceeds the time generated by the estimation software.

**ANSWER:**    The allegation regarding the frequency of occasions on which repair times exceed the repair times estimated with the assistance of estimating software is vague, ambiguous, and based on an erroneous premise.  See Answer to paragraph 42.  Accordingly, State Farm denies the allegations of paragraph 44.

45.    Insurers utilize the Select Service Agreement and similar DRP contracts to deny payment to participating facilities for repair times in excess of those generated by the estimation software.

**ANSWER:**    State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45 that relate to repair programs other than Select Service. State Farm denies the remaining allegations of paragraph 45.

1167496v.8

46.     The influence exerted by insurers over the participating repair facilities-control of labor rates, of repair times, over the types and quality of replacement parts and over specific repair processes-operates to decrease repair costs to the insurers.

**ANSWER:**     State Farm Auto and State Farm Fire admit that they have agreements with body shop operators in an attempt to obtain competitively priced repairs for the benefit of State Farm Auto and State Farm Fire and their policyholders.  State Farm General denies the allegations of paragraph 46 and avers that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana.  State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46 that relate to insurers other than State Farm. State Farm denies the remaining allegations of paragraph 46.

47.     The influence exerted by insurers over the participating repair facilities interferes with the judgment of the collision repairers as to the manner, parts, techniques and necessary procedures to safely and properly repair consumers' vehicles to pre-loss conditions.

**ANSWER:**     State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 47.

48.     Upon information and belief, insurers systematically attempt to divert customers from collision repairers that are not participating DRP facilities, including State Farm's Select Service Program, through misrepresentations to the consumer regarding their freedom to have their repairs performed by any repair facility of their choice.

**ANSWER:**     State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 48 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 48.

49.     Upon information and belief, insurers systematically attempt to divert customers from collision repairers that are not participating DRP facilities, including State Farm's Select

Service Program, by making misrepresentations to consumers regarding "problems" with non-participating repair facilities.

**ANSWER:**    State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 49.

50.    Upon information and belief, insurers systematically attempt to divert customers from collision repairers that are not participating DRP facilities, including State Farm's Select Service Program, by making misrepresentations to consumers that they will be responsible for increased costs with non-participating repair facilities.

**ANSWER:**    State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 50.

51.    Upon information and belief, insurers systematically attempt to divert customers from collision repairers that are not participating DRP facilities, including State Farm's Select Service Program, by misrepresenting to consumers that they will "guarantee" the work done by participating repair facilities, but that no such "guarantee" exists for work done by non-participating repair facilities.

**ANSWER:**    State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 51 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 51.

52.    In truth and in fact, State Farm itself does not provide a "guarantee" of any sort for any work done by a participating repair facility.

**ANSWER:**    Assuming that the phrase "participating repair facility" refers to a vehicle repair facility that has chosen to enter into a Select Service Agreement with State Farm, State Farm Auto and State Farm Fire admit that they do not guarantee parts or labor provided by participating Select Service vehicle repair facilities, as the participating repair facilities agree to

provide a warranty of workmanship, including refinishing, for as long as the customer owns the vehicle.  In the event the vehicle owner and participating repair facility opt to use non-OEM or recycled replacement parts, State Farm Auto and State Farm Fire provide customers with a "Promise of Satisfaction," by which State Farm Auto and State Farm Fire agree to pay for the replacement of those parts at no cost to the customer if the customer becomes dissatisfied with the parts, subject to the terms and conditions of the notification provided to policyholders when such parts are used.  State Farm General denies the allegations of paragraph 52 and avers that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana. State Farm denies any remaining allegations of paragraph 52.

53.   Upon information and belief, insurers systematically attempt to divert customers from collision repairers that are not participating DRP facilities, including State Farm's Select Service Program, by creating delays to repairs performed by non-participating repair facilities by failing to promptly and timely dispatch adjusters and appraisers to those facilities.

**ANSWER:**   State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 53 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 53.

54.   Upon information and belief, insurers attempt to exert influence and control over non-participating repair facilities by subjecting them to the same terms and conditions as participating facilities through control of repair costs and denial of claims.

**ANSWER:**   State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 54.

55.   Upon information and belief, insurers underpay claims made by non-DRP facilities by providing initial estimates based only upon visible damage, denying supplemental claims,

and refusing to pay for procedures required by the manufacturer guidelines and the estimating companies' procedure pages.

**ANSWER:**     State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 55.

56.     Upon information and belief, these practices by State Farm and other insurance companies lead to consumer vehicle repairs that are performed with cost-savings as the primary determining factor rather than safety and reliability.

**ANSWER:**     State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 56.

57.     Auto manufacturers design vehicles to absorb the impact of a collision.  Many component parts of those vehicles must work together to maintain the integrity of the vehicle and to protect its occupants.

**ANSWER:**     State Farm admits that some aspects of the design of certain vehicles relate to the ability of the vehicle to mitigate the effects of a collision by absorbing or dispersing some of the energy of the collision.  State Farm denies the remaining allegations of paragraph 57.

58.     The supplemental restraint systems installed by those manufacturers, including air bags and deployment sensors, must work together with the component parts of the vehicle in order to provide proper timing for air bag deployment.

**ANSWER:**     State Farm admits that some aspects of the design of certain vehicles relate to the ability of the vehicle to deploy airbags timely in the event of a collision.  State Farm denies the remaining allegations of paragraph 58.

59.     Typical airbag deployment occurs in approximately twenty to fifty milliseconds (0.02-0.05), from the initial crash detection until the airbag is fully inflated.  The airbag

1167496v.8

then immediately deflates.   The whole airbag deployment process, from detection to deflation, lasts approximately one tenth (0.1) of a second.

**ANSWER:**   State Farm admits that many automobile manufacturers publish representations regarding airbag deployment that are in accordance with the allegations of paragraph 59.   State Farm further avers that those published representations are the best evidence of their contents. State Farm denies the remaining allegations of paragraph 59.

60.   Vehicle manufacturers engage in extensive engineering and rigorous testing to ensure that airbag deployment occurs at the exact moment in which the maximum safety benefits to the vehicle's passengers will be achieved.

**ANSWER:**   State Farm denies for lack of knowledge the practices, purposes, and intentions of particular vehicle manufacturers, but State Farm admits that, in general, vehicle manufacturers engineer and test the airbag deployment systems installed in their vehicles.   State Farm denies the remaining allegations of paragraph 60.

61.   Variations to the types of component parts used in vehicle repair can directly result in improper timing of airbag deployment in a subsequent crash.

**ANSWER:**   The allegations' broad reference to "variations to the types of component parts used in vehicle repair" is vague and ambiguous.   State Farm denies the allegations of paragraph 61 for lack of knowledge or information sufficient to form a belief as to the truth therein.

62.   Through the pressure and control they exert upon repair facilities, the practices of State Farm and other insurers lead to the use of non-OEM parts in repairs, directly affecting the timing of airbag deployment so that the repaired vehicle no longer meets the manufacturer's safety specifications.

**ANSWER:**   State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 that relate to insurers other than State Farm.   State Farm denies the remaining allegations of paragraph 62.

63.     State Farm and other insurers routinely refuse to pay for procedures necessary to make complete repairs pursuant to the manufacturer guidelines and the procedure pages published by the estimation companies.

**ANSWER:**     State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63 that relate to insurers other than State Farm. State Farm denies the remaining allegations of paragraph 63.

64.     Specifically, claims for necessary paint procedures such as feather, block and prime are routinely denied by State Farm and other insurance companies.

**ANSWER:**     State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 64 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 64.

65.     Upon information and belief, the refusal of State Farm and other insurers to cover payments for costs associated with certain painting procedures that are necessary to make a complete repair often leads to repair facilities taking measures to cut costs associated with painting repaired vehicles.

**ANSWER:**     State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 65 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 65.

66.     Upon information and belief, such cost-cutting measures include methods which result in airbag deployment sensors being painted over or otherwise compromised during the painting process.

**ANSWER:**     State Farm denies the allegations of paragraph 66.

67.     Through the pressure and control they exert upon repair facilities, the practices of State Farm and other insurers lead to the use of inappropriate procedures in repairs, including painting, directly affecting the timing of airbag deployment so that the repaired vehicle no longer meets the manufacturer's safety specifications.

**ANSWER:**     State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 67 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 67.

68.     The use of front or rear repair "clips" involves replacing an entire section of a vehicle with a similar section from a donor vehicle.

**ANSWER:**     State Farm admits the allegations of paragraph 68.

69.     Many automobile manufacturers have publicly stated that they do not approve of the use of "clip" repairs, believe that they pose safety risks, and are not confident that such repairs return vehicles to pre-accident condition.

**ANSWER:**     State Farm denies the allegations of paragraph 69 for lack of knowledge or information sufficient to form a belief as to the truth therein.

70.     Through the pressure and control they exert upon repair facilities, the practices of State Farm and other insurers lead to the use of "clip" repairs, which causes the repaired vehicle to no longer meet the manufacturer's safety specifications.

**ANSWER:**     State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 70 that relate to insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 70.

71.     Many automobile manufacturers have publicly stated that they do not approve of any repairs to aluminum wheels that involve welding, bending, straightening, reforming or adding new material, and that only those repairs to aluminum wheels which are strictly cosmetic are approved.

**ANSWER:**     State Farm denies the allegations of paragraph 71 for lack of knowledge or information sufficient to form a belief as to the truth therein.

72.     Non-cosmetic repairs to aluminum wheels can result in an increased loss of vehicle control, vehicle rollover, personal injury and death.

**ANSWER:**   The allegations' broad reference to "non-cosmetic repairs" is vague and ambiguous. Accordingly, State Farm denies the allegations of paragraph 72 for lack of knowledge or information sufficient to form a belief in the truth therein.

73.     Use of non-recommended tires and wheels can cause steering, suspension, axle or transfer case/power unit failure.

**ANSWER:**   State Farm denies the allegations of paragraph 73 for lack of knowledge or information sufficient to form a belief as to the truth therein.

74.     Upon information and belief, State Farm and other insurers routinely refuse to pay costs associated with OEM wheels and encourage repair facilities to recondition wheels or use non-OEM replacement parts.

**ANSWER:**   State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 74, to the extent they relate to the practices of other insurers. State Farm denies the remaining allegations of paragraph 74.

75.     Through the pressure and control they exert upon repair facilities, the practices of State Farm and other insurers lead to the use of reconditioned and non-OEM replacement aluminum wheels, which causes the repaired vehicle to no longer meet the manufacturer's safety specifications.

**ANSWER:**   State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 75, to the extent they relate to the practices of other insurers. State Farm denies the remaining allegations of paragraph 75.

76.     State Farm and other insurers routinely dictate the use of non-OEM aftermarket parts in a variety of repairs, and mandate that such parts must be Certified Automotive Parts Association (CAPA) certified.

**ANSWER:**   State Farm Auto and State Farm Fire deny that they mandate the use of non-OEM parts in automobile repairs.  State Farm General denies the allegations of paragraph 76 and avers

that it does not write automobile policies nor participate in automobile claims adjusting in Louisiana.  State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76 regarding the practices of insurers other than State Farm.  State Farm denies the remaining allegations of paragraph 76.

77.     In truth and in fact, the CAPA certification process does not involve any actual safety testing of parts whatsoever.

**ANSWER:**     The allegations' broad reference to "actual safety testing" is vague and ambiguous. State Farm denies the allegations of paragraph 77 for lack of knowledge or information sufficient to form a belief as to the truth therein.

78.     Non-OEM replacement parts, though CAPA certified, are frequently ill-fitting and inappropriate for the use in which they are marketed.

**ANSWER:**     State Farm denies the allegations of paragraph 78.

79.     Through the implementation of the Parts Trader program, State Farm has been able to source an increased volume of CAPA-certified parts and mandate their use in repairs.

**ANSWER:**     State Farm denies the allegations of paragraph 79.

80.     In addition to a complete lack of any safety testing and failure to meet manufacturer specifications, these CAPA-certified parts generate longer repair times due to issues with fit and finish.

**ANSWER:**     State Farm denies the allegations of paragraph 80.

81.     Insurers, including State Farm, routinely refuse to pay additional labor times associated with the use of CAPA-certified parts, while mandating their use.

**ANSWER:**     State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 81 regarding the practices of insurers other than State Farm. State Farm denies the remaining allegations of paragraph 81.

1167496v.8

82.     The systematic and repeated refusal to pay repair facilities for necessary parts, procedures and repair times induces repair facilities to seek other methods to minimize repair costs in ways which are unsafe and unfair to consumers.

**ANSWER:**     State Farm denies the allegations of paragraph 82.

83.     Plaintiff realleges and incorporates herein allegations in paragraphs 1 through 82.

**ANSWER:**     State Farm repeats and incorporates by reference its answers to paragraphs 1 through 82.

84.     In the course of their business practices regarding their control over the automobile repair industry, Defendants have violated the provisions of LSA-R.S. 51:121 *et seq.*

**ANSWER:**     State Farm denies the allegations of paragraph 84.

85.     Defendants' repeated and continuing violations of the monopolies statutes include:

a.      Intentionally and falsely leading consumers to believe that they cannot bring their vehicle to the repair facility of their choice;

b.      Systematically attempting to divert customers away from repair facilities that do not participate in their direct repair programs (DRPs);

c.      Falsely informing consumers that they have encountered problems working with certain non-participating repair facilities in the past;

d,      Falsely representing to consumers that they will be liable for additional costs if they use a non-participating repair facility;

e.      Falsely representing to consumers that the work will not be guaranteed by Defendants if performed by a non-participating repair facility, falsely insinuating that such a guarantee exists if performed by a participating facility;

f.      Providing artificially low estimates on vehicles repaired at non-DRP facilities;

g.      Failing to timely evaluate supplemental claims submitted by non-DRP facilities;

h.      Denying many supplemental claims made by non-DRP facilities, including refusing payment requested for procedures required by manufacturer guidelines and procedure pages published by the estimation companies;

1167496v.8

      i.      Manipulating their "survey" system to artificially lower and control labor rates;

      j.      Denying payment for labor rates to any repair facility that differs from the labor rates set and controlled by Defendants;

      k.      Using standardized labor times for repairs and refusing to pay for additional time necessary to actually complete such repairs; and

      l.      Using "miscellaneous" entries on estimates to account for any increases in labor rates or labor times allowed, so that such increases are not readily apparent and the labor rates and permitted labor times still appear "fixed."

**ANSWER:**    State Farm denies the allegations of paragraph 85, including all subparts.

86.    Defendants' continuing and systematic business practices meant to control and manipulate the automobile repair industry constitute a contract, combination or conspiracy in restraint of trade or commerce in this state in violation of LSA-R.S. 51:122.

**ANSWER:**    State Farm denies the allegations of paragraph 86.

87.    Defendants' continuing and systematic business practices meant to control and manipulate the automobile repair industry constitute an attempt to monopolize to conspire to monopolize any part of trade or commerce within this state in violation of LSA-R.S. 51:123.

**ANSWER:**    State Farm denies the allegations of paragraph 87.

88.    Pursuant to LSA-R.S. 51:128, the Attorney General has the right to seek injunctive relief to restrain Defendants' violations of the Monopolies statutes.

**ANSWER:**    State Farm admits the existence of La. R.S. 51:128 but denies that it has engaged in any conduct to which the cited statute would apply.   State Farm denies any remaining allegations of paragraph 88.

89.     Plaintiff realleges and incorporates herein allegations in paragraphs 1 through 88.

**ANSWER:**     State   Farm   repeats   and   incorporates   by   reference   its   answers   to

paragraphs 1 through 88.

90.     In the course of their business practices relative to the manipulation of the automotive
repair industry, defendants have engaged in unfair and deceptive acts and practices in
trade or commerce in violation of LSA-R.S. 51:1401 *et seq.* through the following
actions:

    a.     Plaintiff realleges and incorporates herein allegations in paragraph 85;

    b.     Interfering with the judgment of collision repairers as to the manner, parts,
techniques and necessary requirements to safely and properly repair consumers'
vehicles;

    c.     Demanding the use of non-OEM parts that directly conflict with automobile
manufacturer repair recommendations or guidelines;

    d.     Utilizing adjusters and appraisers with little or no background in automotive
repair to evaluate the necessity of certain repairs, determine the types of parts to
be used in repairs, and locate specific parts to be used in repairs and demand their
usage;

    e.     Systematically underpaying claims made by non-DRP facilities so that such
facilities are forced to file "short-pay" claims against them in order to collect for
the full amount owed for the repair;

    f.     Systematically creating a procedure by which the consumer is removed from the
repair decision-making process and is never given the opportunity to
meaningfully evaluate the proposed repairs or give informed consent for those
repairs that fall outside of the manufacturer guidelines; and

    g.     Manipulating the automobile repair process in a way that compromises safety not
only for policyholders, but for all other consumers who travel on the roadways in
proximity to such repaired vehicles.

**ANSWER:**     State Farm denies the allegations of paragraph 90, including all subparts.  To the

extent the allegations refer to "defendants" other than State Farm, State Farm lacks knowledge or

information sufficient to form a belief as to those other "defendants."

91.     All actions described herein constitute deception to consumers, who are led to believe that they have little or no choice regarding the repair process and who are led to believe that the insurance companies have their best interests in mind with regards to automobile repairs.

**ANSWER:**    State Farm denies the allegations of paragraph 91 for lack of knowledge as to the business practices of other insurers. State Farm denies the remaining allegations of paragraph 91.

92.     All actions described herein result in financial harm to consumers through the loss of value to their vehicles and material changes to vehicles which could void existing warranties or lead to further necessary repairs.

**ANSWER:**    State Farm denies the allegations of paragraph 92.

93.     All actions described herein create potential for further bodily and financial harm by placing into the stream of commerce vehicles whose repairs no longer meet the safety specifications of the vehicle manufacturer.

**ANSWER:**    State Farm denies the allegations of paragraph 93.

94.     The practices alleged in paragraph 90 constitute a pattern of unfair and deceptive trade practices in violation of LSA-R.S. 51:1405.

**ANSWER:**    State Farm denies the allegations of paragraph 94.

95.     Pursuant to LSA-R.S. 51:1407(A), the Attorney General has the right to seek injunctive relief to restrain Defendants' violations of the Louisiana Unfair Trade Practices Act.

**ANSWER:**    State Farm admits the existence of La. R.S. 51:1407 but denies that the statute applies to any actions by State Farm. State Farm denies any remaining allegations of paragraph 95.

96.     Pursuant to LSA-R.S. 51:1407(B) and (C), the Attorney General has the right to seek civil penalties for each violation, including enhanced civil penalties for violations committed against any elder or disabled person.

**ANSWER:**   State Farm admits the existence of La. R.S. 51:1407 but denies that the statute applies to any actions by State Farm.  State Farm denies any remaining allegations of paragraph 96.

97.   Pursuant to LSA-R.S. 51:1407(E), the Attorney General may seek an award of restitution for consumer victims.

**ANSWER:**   State Farm admits the existence of La. R.S. 51:1407 but denies that the statute applies to any actions by State Farm.  State Farm denies any remaining allegations of paragraph 97.

State Farm denies that Plaintiff is entitled to a judgment or any other relief as requested in the unnumbered "PRAYER FOR RELIEF" paragraphs of the Petition.

WHEREFORE, State Farm respectfully requests that:  (1) all claims contained in the Petition be dismissed with prejudice; (2) State Farm be awarded costs, expenses and attorneys' fees; and (3) State Farm be awarded any other relief the Court deems just and proper.

## AFFIRMATIVE DEFENSES

In further response, State Farm asserts the following defenses to the Petition:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim against State Farm upon which relief may be granted.

1167496v.8

## SECOND AFFIRMATIVE DEFENSE

The Petition is barred in whole or in part by the one-year prescriptive period applicable to claims brought pursuant to the Louisiana Monopolies Act and the Louisiana Unfair Trade Practices and Consumer Protection Law.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims against State Farm are barred because Plaintiff has no procedural capacity and/or standing to bring some or all of the claims asserted in the Petition.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of laches, waiver and estoppel, because Plaintiff has unreasonably delayed asserting its claims to the detriment of State Farm, and has taken other actions contrary to the rights asserted herein.

## FIFTH AFFIRMATIVE DEFENSE

Each of Plaintiff's claims or causes of action is barred, in whole or in part, because Plaintiff's claims to seek recovery on behalf of individual persons are improperly joined within the meaning of Rule 20 of the Federal Rules of Civil Procedure, because they did not arise out of the same transaction, occurrence or series of events and/or do not involve common questions of law and fact.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims or causes of action for injunctive relief are barred, in whole or in part, because Plaintiff seeks to enjoin alleged events that have already transpired, and without the required showing of threatened future harm or continuing violation.

1167496v.8

## SEVENTH AFFIRMATIVE DEFENSE

Any and all actions taken by State Farm with respect to any of the matters alleged in the Petition were taken in good faith and in accordance with established industry practice. State Farm has not participated in any unfair or deceptive or anti-competitive trade practices.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims against State Farm are barred because State Farm has complied with all applicable regulations.

## NINTH AFFIRMATIVE DEFENSE

State Farm denies that Plaintiff has valid claims against State Farm under the Louisiana Unfair Trade Practices and Consumer Protection Law and the Louisiana Monopolies Act.  However, if such claims are found to exist, State Farm pleads all applicable defenses under the Louisiana Unfair Trade Practices Act and the Louisiana Monopolies Act.

## TENTH AFFIRMATIVE DEFENSE

State Farm has not entered into any contract, combination, or conspiracy in restraint of trade or commerce in Louisiana.

## ELEVENTH AFFIRMATIVE DEFENSE

State Farm has not monopolized, or attempted to monopolize, combine, or conspire with any other person to monopolize any part of the trade or commerce within Louisiana.

1167496v.8

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims against State Farm fail because the facts, as pled in the Petition, show that State Farm does not have sufficient market power to monopolize or to have market impact on competition.

## THIRTEENTH AFFIRMATIVE DEFENSE

Any and all of State Farm's acts or omissions alleged by the Plaintiff were unilateral, reasonable, lawful, justified, and pro-competitive, and were carried out based on independent, legitimate business and economic justifications and in furtherance of State Farm's legitimate business interests, and constitute *bona fide* business competition.

## FOURTEENTH AFFIRMATIVE DEFENSE

The alleged acts or omissions of State Farm did not substantially lessen competition in any properly-defined market.

## FIFTEENTH AFFIRMATIVE DEFENSE

Each of the antitrust claims and causes of action asserted by Plaintiff is barred because Plaintiff and the persons on whose behalf Plaintiff purports to seek relief lack antitrust injury.

## SIXTEENTH AFFIRMATIVE DEFENSE

Any loss, injury, or damage for which Plaintiff seeks to recover on behalf of Louisiana consumers or entities were the result of intervening and/or superseding causes not related to or under the control of State Farm. Any such loss, injury, or damage claimed by Plaintiff was proximately caused by acts or omission of body shop operators and/or consumers,

1167496v.8

market forces, and events unrelated to State Farm's alleged conduct, and/or the acts or omissions of persons or entities other than State Farm over whom or which State Farm has no control.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims against State Farm under the Louisiana Unfair Trade Practices and Consumer Protection Law are barred by La. R.S. 51:1406(1) because State Farm is an affiliate of a federally insured financial institution.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims against State Farm under the Louisiana Unfair Trade Practices and Consumer Protection Law are barred by La. R.S. 51:1406(1) because the alleged actions and transactions are subject to the jurisdiction of the Louisiana Insurance Commissioner.

## NINETEENTH AFFIRMATIVE DEFENSE

State Farm denies that Plaintiff has valid claims against State Farm pursuant to the 1963 Consent Decree, as State Farm is not a party to that agreement.

## TWENTIETH AFFIRMATIVE DEFENSE

State Farm has engaged in no activity or conduct that is a proximate cause of any injury alleged by Plaintiff.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Each of the claims and causes of action asserted by Plaintiff is barred in whole or in part because Plaintiff and the persons on whose behalf Plaintiff purports to seek relief lack

1167496v.8

injury-in-fact, or the damages are speculative and impossible to reasonably ascertain and allocate.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

State Farm is entitled to a set-off against any potential award of damages, based on amounts paid in settlement of prior claims between State Farm and any person on whose behalf the Plaintiff purports to seek relief.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

To the extent that any allegation in the Amended Complaint has not been answered, State Farm specifically denies same.

**RESERVATION OF RIGHT TO AMEND**

Discovery is ongoing.   State Farm therefore reserves its right to amend this pleading.

Dated:   September 3, 2014                    /s/ Wayne J. Lee

Wayne J. Lee, 07916
  wlee@stonepigman.com
J. Dalton Courson, 28542
  dcourson@stonepigman.com
Lesli D. Harris, 28070
  lharris@stonepigman.com
Abigayle C. Farris, 33547
  afarris@stonepigman.com
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

*Attorneys for Defendants State Farm Fire and Casualty Company, State Farm General Insurance Company, and State Farm Mutual Automobile Insurance Company*

- 33 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Answer and Affirmative Defenses to Plaintiff's Petition for Injunctive Relief and Restitution has been served upon each party or counsel of record by U.S. Mail this 3rd day of September, 2014.

*/s/ Wayne J. Lee* _____

1167496v.8