UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STATE OF LOUISIANA, EX REL | * | CIVIL ACTION NO. 14-550 |
| JAMES D. "BUDDY" CALDWELL, | * | |
| ATTORNEY GENERAL | * | |
| | * | |
| | * | |
| Plaintiff, | * | JUDGE SHELLY D. DICK |
| VERSUS | * | |
| | * | |
| STATE FARM FIRE AND CASUALTY | * | |
| COMPANY, STATE FARM GENERAL | * | |
| INSURANCE COMPANY, AND STATE FARM | * | MAGISTRATE JUDGE |
| MUTUAL AUTOMOBILE INSURANCE | * | STEPHEN C. RIEDLINGER |
| COMPANY | * | |
| | * | |
| Defendants. | * | |
| * * * * * * * * * * * * * * * * * * * | * | |

**RESPONSE MEMORANDUM OF LAW OF STATE FARM FIRE AND CASUALTY COMPANY, STATE FARM GENERAL INSURANCE COMPANY AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY IN OPPOSITION TO THE ATTORNEY GENERAL'S MOTION TO REMAND**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 5

I.    THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER THIS ACTION ............................................................................................................ 5

     A.    The Attorney General's Petition Asserts a Federal Claim ....................... 5

     B.    The Court Also Has Federal Question Jurisdiction Under *Grable* ........................ 10

          1.    The Attorney General Is Seeking Relief that Would Require the Resolution of a Federal Issue ................................................................... 11

          2.    The Federal Issue Is Actually Disputed .................................................... 14

          3.    The Federal Issue Is Substantial .............................................................. 15

          4.    Federal Jurisdiction Will Not Disturb the State-Federal Balance .............. 16

CONCLUSION ......................................................................................................... 17

1172033v1

**Cases**

*Abadam v. Hawaii*,
    248 F.3d 1169 (Table), 2000 WL 33122830 (9th Cir. Jan. 18, 2000) ............................2, 7, 11

*Bank One Tex. National Ass'n v. Morrison*,
    26 F.3d 544 (5th Cir. 1994) .................................................................................................8

*Board of Commissioners of Southeast Louisiana Flood Protection*
    *Authority-East v. Tennessee Gas Pipeline Co., LLC*,
    No. 13-5410, --- F. Supp. 2d ---, 2014 WL 2943602 (E.D. La. June 27, 2014) ....................16

*Boelens v. Redman Homes, Inc.*,
    759 F.2d 504 (5th Cir. 1985) .................................................................................................9

*Cajun Offshore Charters, LLC v. BP Products North America, Inc.*,
    No. 10-1341, 2010 WL 2160292 (E.D. La. May 25, 2010)...................................................16

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987) .............................................................................................................8

*In re Carter*,
    618 F.2d 1093 (5th Cir. 1980) .........................................................................................8, 11

*EBI-Detroit, Inc. v. City of Detroit*,
    279 F. App'x 340 (6th Cir. 2008) ..........................................................................................7

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006)......................................................................................................5, 6, 8

*Franchise Tax Board v. Construction Laborers Vacation Trust*,
    463 U.S. 1 (1983).............................................................................................1, 5, 10, 11, 14

*Gillis v. Louisiana*,
    294 F.3d 755 (5th Cir. 2002) .................................................................................................9

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
    545 U.S. 308 (2005)..............................................................................4, 10, 11, 16, 17

*Houston Refining, L.P. v. United Steel, Paper & Forestry, Rubber, Manufacturing,*
    *Energy, Allied Industrial & Service Workers International Union*,
    765 F.3d 396 (5th Cir. 2014) .................................................................................................5

*Louisiana Power and Light Co. v. United Gas Pipe Line Co.*,
    493 So. 2d 1149 (La. 1986) ...........................................................................................14, 15

*Miller v. Granados*,
    529 F.2d 393 (5th Cir. 1976) ...........................................................................................6, 16

1172033v1

*Mitchell v. Bank of America, N.A.*,
No 6:09-cv-2131, 2010 WL 3340486 (M.D. Fla. Aug. 25, 2010)..........................12

*National Credit Reporting Ass'n, Inc. v. Experian Information Solutions, Inc.*,
No. C04-01661, 2004 WL 1888769 (N.D. Cal. July 21, 2004)...........................13

*Parker Auto Body, Inc. v. State Farm Mutual Automobile Insurance Co.*,
No. 14-cv-2270 (W.D. La. compl. filed on July 9, 2014)..................................15

*Reid v. Walsh*,
620 F. Supp. 930 (M.D. La. 1985)...............................................8, 11, 14

*Singh v. Duane Morris LLP*,
538 F.3d 334 (5th Cir. 2008) ..................................................4, 10, 11

*Smith v. Local No. 25, Sheet Metal Workers International Ass'n*,
500 F.2d 741 (5th Cir. 1974) .............................................................8

*Smith v. Regional Transit Authority*,
756 F.3d 340 (5th Cir. 2014) ..........................................................9, 10

*Southern Collision & Restoration, LLC v. State Farm Mutual Automobile Insurance Co.*,
No. 14-cv-1909 (E.D. La. compl. filed on Aug. 20, 2014)..............................15, 16

*Taylor v. Anderson*,
234 U.S. 74 (1914).......................................................................5

*United States v. City of Loveland*,
621 F.3d 465 (6th Cir. 2010) ......................................................7, 10, 12

*United States v. Rose*,
449 F.3d 627 (5th Cir. 2006) ...........................................................14

*Venable v. Louisiana Workers' Compensation Corp.*,
740 F.3d 937 (5th Cir. 2013) ......................................................10, 11, 17

## **Statutes**

15 U.S.C. § 1...............................................................1, 3, 5, 6, 8, 12, 13

15 U.S.C. § 3...............................................................1, 3, 5, 6, 8, 12, 13

15 U.S.C. § 4..............................................................................4, 6, 13, 16

28 U.S.C. § 1331..........................................................................1, 5, 6, 10

28 U.S.C. § 1337..........................................................................1, 4, 6, 10

28 U.S.C. § 1367...............................................................................10

La. Rev. Stat. Ann. §§ 51:121 et seq. ......................................................3, 6, 14

La. Rev. Stat. Ann. §§ 51:1401 et seq. .....................................................3, 6, 15

iii

## INTRODUCTION

Defendants State Farm Fire and Casualty Company, State Farm General Insurance Company, and State Farm Mutual Automobile Insurance Company (collectively, "State Farm") respectfully submit this opposition to the Attorney General's motion to remand.

Federal question jurisdiction under 28 U.S.C. § 1331 exists where a complaint establishes "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). Contrary to the Attorney General's contentions, both of these bases for federal question jurisdiction are satisfied in this case. Federal jurisdiction is also provided under 28 U.S.C. § 1337, which gives the district courts original jurisdiction over actions "arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337.

In his Petition, the Attorney General seeks injunctive relief that is premised on alleged violations of a 1963 federal Consent Decree ("Consent Decree"), which was issued by the United States District Court for the Southern District of New York.[1] The Consent Decree prohibits certain conduct with regard to the handling of automobile insurance claims that would purportedly violate sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1 et seq. (*See* Petition ("Pet.") [1-1] at ¶¶ 13-17; Consent Decree, § I.) To promote the goals of the Sherman Act, the Consent Decree enjoins, *inter alia*, "allocating or dividing customers, territories, markets or business among any appraisers of damage to automotive vehicles" and "fixing, establishing, maintaining or otherwise controlling the prices to be paid for . . . or to be charged by . . . automotive repair shops for the repair of damage to automotive vehicles or for replacement parts

---

[1] A copy of the Consent Decree is attached to the Attorney General's Petition as Exhibit B.

or labor in connection therewith . . . ." ( Consent Decree, § IV(A)(4) & (5).)  Pursuant to the Petition's allegations regarding the Consent Decree, the Attorney General asks for permanent injunctive relief prohibiting Defendants from "[e]ngaging in any activity that would be a violation of the 1963 Consent Decree."  (Pet., Prayer for Relief, subsection 3.)

The Attorney General's request for injunctive relief to prohibit future violations of the federal Consent Decree provides multiple bases for federal question jurisdiction.  First, as discussed below, because the Consent Decree prohibits alleged violations of the Sherman Act, the Attorney General will not be able to establish a violation of the Consent Decree without proving a violation of the Sherman Act.  Thus, by the express terms of the Petition and the attached Consent Decree, the Attorney General's claim for relief pursuant to the Consent Decree is in reality a claim under the Sherman Act.  Moreover, as courts have held, the issue of whether a defendant has violated the terms of a federal consent decree "is a question necessarily governed by federal law," and an action that "s[eeks] to enforce a Federal Consent Decree, contain[s] a claim 'arising under' federal law"  *See, e.g.*, *Abadam v. Hawaii*, 248 F.3d 1169 (Table), 2000 WL 33122830, at *1 (9th Cir. Jan. 18, 2000).  Accordingly, the Attorney General's claim for injunctive relief to enforce the Consent Decree both is created by federal law and depends upon resolution of substantial issues of federal law.

Attempting to avoid this Court's jurisdiction, the Attorney General contends that he "alleges only state law claims" and that "the claims for relief asserted by the State only cite to the LUTPA and Monopolies statutes."  (Pl. Mem. in Support of Mot. to Remand ("Pl. Mem.") [13-1] at 5.)  The Attorney General argues that "the State is in no way seeking to 'enforce' the 1963 Federal Consent Decree" and merely "referenced that consent decree in its petition in an illustrative manner."  (*Id.* at 9.)  In fact, the Attorney General's request for an injunction

2

prohibiting Defendants from "[e]ngaging in any activity that would be a violation of the 1963 Consent Decree" (Pet., Prayer for Relief, subsection 3) clearly seeks to enforce the Consent Decree and is not simply "illustrative." Moreover, the Petition in no way links its request to enjoin violations of the federal Consent Decree to the Attorney General's state law claims. Rather, the Attorney General seeks separate and independent injunctive relief in connection with his state law claims. (*See id.*, Prayer for Relief, subsections 1 & 2.)[2] Under the plain terms of the Petition, the Attorney General's claim for injunctive relief pursuant to the federal Consent Decree is not founded on the Attorney General's state law claims.

The Attorney General also now claims that determining whether Defendants' conduct violates the federal Consent Decree would require only factual determinations as to whether Defendants had engaged in conduct that was prohibited by the Consent Decree and "does not implicate federal law." (Pl. Mem. at 10.) To the contrary, before the Court could grant an injunction prohibiting conduct that "would be a violation" of the Consent Decree, the Attorney General would have to show as a matter of both fact and law that the conduct at issue was encompassed within the letter and spirit of the Consent Decree. That showing would necessarily entail an analysis of the conduct under sections 1 and 3 of the Sherman Act and case law interpreting those sections. Such an analysis would be especially necessary given the Attorney General's concession that State Farm is not a party to the Consent Decree. As such, the Attorney General would have to prove that State Farm's practices actually violated the Sherman Act as a

---

[2]    The Attorney General alleges that State Farm has committed actions and/or omissions that violate the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Rev. Stat. Ann. §§ 51:1401 et seq., and the Louisiana Monopolies Law, La. Rev. Stat. Ann. §§ 51:121 et seq. (*See* Pet. ¶ 1.) The Petition seeks separate injunctive relief based upon those state-law claims, barring Defendants from "1. Engaging in any activity in violation of the Louisiana Monopolies statutes" and from "2. Engaging in any activity in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law." (Pet., Prayer for Relief, subsections 1 & 2.)

1172033v1

necessary predicate for the injunctive relief claim he has pled. Thus, the Attorney General's claim for injunctive relief based upon the Consent Decree arises under federal law, namely, the Sherman Act, and necessarily invokes the exclusive jurisdiction of the federal district courts to "prevent and restrain violations" of the Sherman Act. *See* 15 U.S.C. § 4; 28 U.S.C. § 1337.

The Attorney General's allegation that Defendants have violated the Consent Decree and his claim for injunctive relief to restrain future violations of the Consent Decree also establish a related but independent basis for federal question jurisdiction, even assuming *arguendo* that, as the Attorney General asserts, the Petition alleges only state-law claims. Under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (citing *Grable*, 545 U.S. at 314). Here, even if the Attorney General's claims under the Consent Decree could be characterized as state-law claims, those claims would necessarily depend on the resolution of substantial, actually disputed questions of federal antitrust law as to whether any conduct by the Defendants violated the Sherman Act. Accordingly, issues of federal law would remain central to this action, and, given the significance of these federal questions raised by the Petition, federal jurisdiction would not disturb the state/federal balance. As shown in more detail below, the Attorney General's Petition unquestionably meets the *Grable* test.

For these reasons and those set forth below, the Attorney General's motion for remand should be denied.

1172033v1

<u>**ARGUMENT**</u>

**I. THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER THIS ACTION**

**A. The Attorney General's Petition Asserts a Federal Claim**

Under the well-pleaded complaint rule, whether a complaint raises a federal question is "'determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration.'" *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)). Pursuant to this rule, "[a] case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (citation omitted). "Under the well-pleaded complaint rule, courts must look only to the complaint to confirm their jurisdiction." *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 765 F.3d 396, 405 n.13 (5th Cir. 2014).

Here, federal question jurisdiction exists under 28 U.S.C. § 1331 because the Petition asserts a cause of action created by federal law. The Petition includes separate allegations regarding the federal Consent Decree, entered by the federal district court for the Southern District of New York, in a section of the Petition entitled "1963 CONSENT DECREE." (Pet. at ¶¶ 13-17.) The Attorney General specifically alleges that the Consent Decree was entered into "for violations of Section 1 and 3 of the Sherman Act." (*Id.* at ¶ 17.) The Petition seeks relief under the Consent Decree, asking the Court to permanently enjoin State Farm from "[e]ngaging in any activity that would be a violation of the 1963 Consent Decree . . . ." (*Id.*, Prayer for Relief, subsection 3.) Under the plain meaning of the relevant allegations and the relief sought,

by asking the Court to permanently enjoin "any activity that would be a violation of the 1963 Consent Decree," the Attorney General is seeking to restrain "violations of Section 1 and 3 of the Sherman Act." (*Id.* at ¶ 17.) Accordingly, the claim arises under federal law and provides federal question jurisdiction. *See Empire Healthchoice*, 547 U.S. at 689-90.

Moreover, the Attorney General's request for permanent injunctive relief enforcing the prohibitions of the federal Consent Decree (*id.*, Prayer for Relief, subsection 3) is on the face of the Petition separate and distinct from the Attorney General's request for injunctions under Louisiana law prohibiting State Farm from "[e]ngaging in any activity in violation of the Louisiana Monopolies statutes, LSA-R.S. 51:121 *et seq.*" and from "[e]ngaging in any activity in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 *et seq.*" (Pet., Prayer for Relief, subsections 1 & 2.) Thus, the Petition and the Consent Decree (which is attached to the Petition) make clear that in requesting the Court to permanently enjoin "any activity that would be a violation of the 1963 Consent Decree," the Attorney General is actually seeking to enjoin conduct prohibited by the Sherman Act. Therefore, the Attorney General's claim for injunctive relief based on the federal Consent Decree is a claim that is created by federal law and over which this Court has jurisdiction under 28 U.S.C. § 1331.

The Court also has jurisdiction over this case pursuant to 15 U.S.C. § 4, which gives the federal district courts exclusive jurisdiction "to prevent and restrain violations" of the Sherman Act, and 28 U.S.C. § 1337, which gives the district courts jurisdiction over any action arising under federal statutes "regulating commerce or protecting trade and commerce against restraints and monopolies." *See Miller v. Granados*, 529 F.2d 393, 395 (5th Cir. 1976) ("[T]he jurisdiction conferred by Congress on federal courts under the Sherman Act is exclusive.").

Federal courts have repeatedly held that actions requesting enforcement of a consent

6

decree issued by a federal court arise under and are governed by federal law.  *See, e.g.*, *Abadam*, 2000 WL 33122830, at *1.  In *Abadam*, the plaintiffs alleged a breach of contract claim on the grounds that defendants violated their contractual obligations under the terms of a federal consent decree.  The Ninth Circuit held that the district court properly denied the plaintiffs' motion to remand, explaining that "[w]hether defendants violated the terms of the Federal Consent Decree is a question necessarily governed by federal law." *Id.*  Thus, the Ninth Circuit "agree[d] with the district court's determination that the Complaint, which sought to enforce a Federal Consent Decree, contained a claim 'arising under' federal law." *Id.*; *see also EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340, 347 (6th Cir. 2008) ("While as the plaintiff EBI enjoys the long-established right to 'decide what law he will rely upon,' . . . that right does not allow EBI to escape the consequences of claiming that the defendants violated a federal court order." (citation omitted)); *United States v. City of Loveland*, 621 F.3d 465, 471-72 (6th Cir. 2010) (federal district court had jurisdiction over declaratory judgment action requesting enforcement of consent decree).

The Attorney General now attempts to backtrack from his Petition.  The Attorney General asserts that that his claims are brought only under Louisiana state law and that "the State is in no way seeking to 'enforce' the 1963 Federal Consent Decree," which, according to the Attorney General, is merely "referenced" in the Petition "in an illustrative manner."  (Pl. Mem. at 9.)  These assertions are directly contrary to the relief requested, which clearly seeks to enforce the Consent Decree.  (*See* Pet., Prayer for Relief, subsection 3 (requesting injunction prohibiting Defendants from "[e]ngaging in any activity that would be a violation of the 1963 Consent Decree").)

Contrary to the Attorney General's post-removal contentions, this is simply not a case

where a plaintiff has chosen to "plead[] only state claims and ignor[e] any federal claims he or she might have." (Pl. Mem. at 5 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also id.* at 8). Rather, the Attorney General has sought to have his cake and eat it too by asserting a claim and seeking relief based upon the federal Consent Decree and the Sherman Act, but not expressly labeling that claim a "claim for relief." (*See* Pet. at p. 12-16 ("Claims for Relief").) The substance of the Petition, however, governs jurisdiction, not labels. *See In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980) (in determining upon removal whether there is federal question jurisdiction, the court "looks to the substance of the complaint, not the labels used in it"); *Smith v. Local No. 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d 741, 749 n.6 (5th Cir. 1974) (same); *Reid v. Walsh*, 620 F. Supp. 930, 933 (M.D. La. 1985) (same). The Petition's allegations regarding the Consent Decree expressly state that the Consent Decree prohibits conduct that purportedly violates sections 1 and 3 of the Sherman Act (*see* Pet. at ¶ 17) and expressly seeks injunctive relief that would prohibit those same violations. The explicit substance of this claim gives rise to federal question jurisdiction. *See Empire Healthchoice*, 547 U.S. at 689-90.

In his Motion to Remand, the Attorney General ignores the express language of the Petition and argues, for the first time, that he cannot possibly be seeking to enforce the 1963 federal Consent Decree because "neither the State of Louisiana *nor State Farm* were involved in any way with the 1963 federal consent decree." (Pl. Mem. at 9 (emphasis in original).) This argument fails as a matter of law because, in assessing whether removal is appropriate, this Court is constrained by the allegations in the Attorney General's Petition – not the after-the-fact arguments in the Attorney General's Motion to Remand. *See Bank One Tex. Nat'l Ass'n v. Morrison*, 26 F.3d 544, 547 (5th Cir. 1994) (jurisdiction is determined as of the time of removal;

*Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985) ("the majority view is that a plaintiff's voluntary amendment to a complaint after removal to eliminate the federal claim upon which removal was based will not defeat federal jurisdiction").

Moreover, the Attorney General's contention that State Farm is not a party to the Consent Decree cuts against the Attorney General. If the Attorney General is conceding that State Farm as a non-party is not directly bound by the Consent Decree, then the only legal basis for the Attorney General's requested injunctive relief pursuant to that Decree would be the purported illegality under the Sherman Act of the conduct described in the Decree. If that is so, the request for injunctive relief enforcing the Decree's prohibitions is no more than a very thinly disguised Sherman Act claim, and the Attorney General is simply seeking to enjoin State Farm from engaging in the purported Sherman Act violations. Notably, the Petition in no way ties its allegations regarding the federal Consent Decree to state law. Rather, the Petition expressly notes that the Consent Decree is based upon the Sherman Act. (Pet. at ¶ 17.) As in *Gillis v. Louisiana*, 294 F.3d 755, 760 (5th Cir. 2002), removal is proper because the plaintiff is "implicitly seeking injunctive relief based on a federal statute."

In any event, the Attorney General's contentions that State Farm is not a party to the Consent Decree and that the Department of Justice has taken the position that individual insurers are not bound by the Consent Decree (Pl. Mem. at 9) are not germane to remand. Those contentions simply establish that State Farm has defenses to the Attorney General's request for enforcement of the Consent Decree and to the Attorney General's attempt to bring a Sherman Act claim through the Consent Decree. As the Fifth Circuit has made clear, the question of whether the Court has "subject matter jurisdiction to consider a claim" must not be "conflat[ed]" with "the determination of whether the plaintiff has stated a valid claim for relief." *Smith v.*

*Reg'l Transit Auth.*, 756 F.3d 340, 344 (5th Cir. 2014); *see also Loveland*, 621 F.3d at 471 (effect of defendant's status as non-party to federal consent decree was "an issue to be resolved on the merits rather than by a challenge to the district court's jurisdiction").

In short, as an examination of the Petition demonstrates, it is the Attorney General (not Defendants) who ignores – and asks the Court to ignore – the express content and substance of the Petition. The Petition seeks to permanently enjoin conduct by Defendants that is allegedly in violation of the Sherman Act and that is prohibited by the federal Consent Decree. (*See* Pet., Prayer for Relief, subsection 3.) Accordingly, the Petition asserts a claim arising under federal law, and this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337.[3]

### B. The Court Also Has Federal Question Jurisdiction Under *Grable*

Federal question jurisdiction also exists because even a complaint that ostensibly pleads only state law claims may nonetheless arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd.*, 463 U.S. at 9. Under this principle, federal courts have federal question jurisdiction over state law claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *see also id.* at 312 (noting that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues"); *accord Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir. 2008); *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). Removal is therefore appropriate where "the plaintiff's right

---

[3] In addition, the Court has supplemental jurisdiction over the Attorney General's state-law claims under 28 U.S.C. § 1367.

1172033v1

to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27-28. Accordingly, upon removal, the district court "should inspect the complaint carefully to determine whether a federal claim is necessarily presented," even if the plaintiff has attempted to couch his pleading in terms of state law. *In re Carter*, 618 F.2d at 1101; *see also Reid*, 620 F. Supp. at 933 (removal court has "duty" to "scrutinize the complaint to see if a federal claim has been presented").

Under *Grable* and Fifth Circuit precedent applying *Grable*, federal question jurisdiction exists where: (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. *Grable*, 545 U.S. at 314; *accord Singh*, 538 F.3d at 338; *Venable*, 730 F.3d at 941. The Attorney General's request for injunctive relief meets all of the above criteria.

### 1. The Attorney General Is Seeking Relief that Would Require the Resolution of a Federal Issue

Although the Attorney General argues that he has asserted only state-law claims, the Attorney General is seeking injunctive relief that necessarily depends on the application of the Sherman Act and construction of the federal Consent Decree. Specifically, as the Petition alleges, the Attorney General is seeking to enjoin Defendants and "those persons in active concert or participation with them" from "[e]ngaging in any activity that would be a violation of the 1963 Consent Decree," which was filed in the United States District Court for the Southern District of New York to restrain alleged violations of a federal statute – the Sherman Act. (Pet. at ¶ 17; Prayer for Relief, subsection 3). As discussed above, resolution of whether Defendants have "violated the terms of the Federal Consent Decree is a question necessarily governed by federal law." *Abadam*, 2000 WL 33122830, at *1. Accordingly, even if the Attorney General's

action were deemed not to "arise under" federal law, it presents substantial federal-law issues that trigger federal jurisdiction. *See Mitchell v. Bank of Am., N.A.*, No 6:09-cv-2131, 2010 WL 3340486, at *2-3 (M.D. Fla. Aug. 25, 2010) (holding that plaintiff's claim was predicated on violations of federal law and therefore had "federal-law issues imbedded in state-law claims" that "trigger federal jurisdiction.").

As master of his Petition, the Attorney General could have limited his request for a permanent injunction to his two asserted state law claims and asked the Court to restrain State Farm only from: (1) engaging in any activity in violation of the Louisiana Monopolies statutes or (2) engaging in any activity in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law. However, the Attorney General chose to go a step further and has also requested a separate permanent injunction restraining State Farm from "[e]ngaging in any activity that would be a violation of the 1963 Consent Decree." (Pet., Prayer for Relief, subsection 3.) As pled, there can be no doubt that the Attorney General is seeking to enforce the federal Consent Decree against State Farm, albeit in the wrong court and against a non-party. *See United States v. City of Loveland*, 621 F.3d 465, 471-72 (6th Cir. 2010) (finding case was removable because a claim that would impact the consent decree raised a "substantial federal question"). Taking the allegations of the Petition at face value, removal was therefore appropriate regardless of whether State Farm is a party to the Consent Decree. *See id.* at 471 ("To be sure, Loveland was not a party to the consent decree. However, it cannot escape the district court's jurisdiction over its consent decree through artful pleading and argument.").

The presence of a federal question in this case is underscored by the fact that the Attorney General is seeking to restrain "*violations of Section 1 and 3 of the Sherman Act,*" as described

more fully in the 1963 federal Consent Decree.[4]  The Attorney General argues that the Petition's reference in the Prayer for Relief to "activity that 'would be a violation of the 1963 Consent Decree' . . . does not implicate federal law, but rather, the *factual circumstances* laid out in that document."  (Pl. Mem. at 10.)  This argument is meritless.  15 U.S.C. § 4 gives federal district courts *exclusive jurisdiction* "to prevent and restrain violations" of the Sherman Act.  15 U.S.C. § 4.  The "factual circumstances" that are prohibited by the Consent Decree are all alleged violations of the Sherman Act and fall squarely within the jurisdiction of this Court.  *See Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Solutions, Inc.*, No. C04-01661, 2004 WL 1888769, *2-5 (N.D. Cal. July 21, 2004) ("[P]laintiff's complaint specifically referenced violation of federal antitrust laws for its claim of unlawful business practices.  Accordingly, its [state law] claim requires resolution of federal law.").  As such, the Attorney General cannot escape the application of federal question jurisdiction.

Here, to promote the goals of the Sherman Act, the federal Consent Decree prohibits "allocating or dividing customers, territories, markets or business among any appraisers of damage to automotive vehicles" and "fixing, establishing, maintaining or otherwise controlling the prices to be paid for . . . or to be charged by . . . automotive repair shops for the repair of damage to automotive vehicles or for replacement parts or labor in connection therewith . . . ." (Consent Decree, § IV(A)(4) & (5).)  Joint conduct such as the fixing, maintaining or controlling

---

[4] The Petition describes the Consent Decree as follows:

> Pursuant to those allegations, defendants entered into a consent decree with the United States Department of Justice for *violations of Section 1 and 3 of the Sherman Act*.  Under the consent decree, defendants were ordered to terminate their established plans to control the automobile material damage repair industry and depress its related costs, and were enjoined from placing into practice any future plans or programs which would have those effects.

(Pet. at ¶ 17 (emphasis added).)

of prices is a core concern of the Sherman Act, as is the allocation of customers, territories, markets or business. *See, e.g.*, *United States v. Rose*, 449 F.3d 627, 630 (5th Cir. 2006) ("conspiracies to 'submit collusive, noncompetitive, rigged bids,' allocate customers, and fix prices are *per se* violations of the Sherman Act" (citation omitted)). To violate the Consent Decree, such conduct also would have to violate the Sherman Act. Determining whether State Farm had engaged, or was engaging in, conduct prohibited by the Consent Decree would necessarily require the Court to decide whether State Farm was engaged in Sherman Act violations. Therefore "federal law is an essential element" of the Attorney General's cause of action under the Consent Decree. *See Reid*, 20 F. Supp. at 932. Removal is appropriate because the Attorney General's "right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27-28.

### 2.     The Federal Issue Is Actually Disputed

The federal issues raised by the Attorney General's request for injunctive relief are actually disputed. State Farm denies that it has engaged in conduct that violates the Consent Decree or the Sherman Act. State Farm further denies that it is bound, or can be bound, by the Consent Decree.

In an effort to defeat removal, the Attorney General argues that this Court will not have to resolve disputed issues of federal law because the Attorney General has asserted claims under the Louisiana Monopolies Statute, which is the State's supposedly "identical" corollary to the Sherman Act. (Pl. Mem. at 11.) The Attorney General contends that the "identical nature" of Louisiana's antitrust statutes to the provisions of the Sherman Act "clearly indicate that there is no 'substantial issue of federal law that is in actual dispute.'" (*Id*. (citation omitted).) However, the Louisiana Supreme Court, in *Louisiana Power and Light Co. v. United Gas Pipe Line Co.*, 493 So. 2d 1149 (La. 1986) – the very decision cited by the Attorney General – has made clear

14

that Louisiana antitrust law is not necessarily identical to federal antitrust law. As the Louisiana Supreme Court stated, while "the United States Supreme Court's interpretation of the Sherman Act "should be a persuasive influence on the interpretation of our own state enactment," the "*federal analysis is not controlling*." *Louisiana Power and Light*, 493 So. 2d at 1158 (emphasis added). Therefore, contrary to the Attorney General's contentions, the determination of whether any of Defendants' alleged present day conduct violates the Sherman Act and thus also violates the Consent Decree cannot be resolved by simply applying Louisiana antitrust law and assuming that the federal law is "identical." No determination can be made as to what, if any, of the alleged conduct violates the Consent Decree without a careful analysis of federal antitrust law and federal case law interpreting it. These issues of federal law are in actual dispute.

### 3. The Federal Issue Is Substantial

The federal issues raised by the Petition – in particular, determining whether the Attorney General is entitled to a permanent injunction enjoining State Farm from committing federal antitrust violations as set forth in the Consent Decree – are substantial and at the heart of the Attorney General's request for injunctive relief. Moreover, these same federal issues with regard to the Consent Decree and the Sherman Act are being litigated in numerous other cases that have been centralized as an MDL in the Middle District of Florida in *In Re: Auto Body Shop Antitrust Litig.*, MDL No. 2557.[5] Where an action seeks to replicate "critical federal issues of law in

---

[5] The MDL consolidated cases, including two that were originally filed in Louisiana federal courts, allege that State Farm is engaging in practices that fall "squarely within those prohibited by the [1963 Federal Consent] Decree" and the Sherman Act. *See* Complaint [Dkt. 1], *Southern Collision & Restoration, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-1909, ¶ 59 (E.D. La. compl. filed on Aug. 20, 2014); Complaint [Dkt. 1], *Parker Auto Body, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-2270, ¶ 165 (W.D. La. compl. filed on July 9, 2014). As discussed at length in State Farm's motion to stay (*see* Mem. in Supp. of Mot. to Stay [11-1] at 2-4, 6-7), not only are the Attorney General's claims nearly identical to those brought by the plaintiffs in *Parker* and *Southern Collision*, but they also are nearly identical to the alleged claims in the other actions consolidated in the MDL. The Judicial Panel on Multidistrict

[multiple litigations] and the potential for even more litigation," the court is justified in "'resort[ing] to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.'" *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC*, No. 13-5410, --- F. Supp. 2d ---, 2014 WL 2943602, at \*35 (E.D. La. June 27, 2014) (quoting *Grable*, 545 U.S. at 314). The centrality of the issues surrounding the Consent Decree and the alleged Sherman Act violations in both this case and many other cases underscores the substantial nature of the federal questions raised by the Petition.

### 4. Federal Jurisdiction Will Not Disturb the State-Federal Balance

Finally, it would not disturb the balance of federal and state judicial power for a federal court to resolve issues related to the enforcement of the federal Consent Decree and the Sherman Act. A federal district court entered the Consent Decree. As set forth above, the state court does not have jurisdiction to enforce the Consent Decree. The Consent Decree, moreover, is premised on the Sherman Act. The federal district courts have *exclusive jurisdiction* "to prevent and restrain violations" of the Sherman Act. *See* 15 U.S.C. § 4; *see also Miller v. Granados*, 529 F.2d 393, 395 (5th Cir. 1976) ("[T]he jurisdiction conferred by Congress on federal courts under the Sherman Act is exclusive."). Nothing about the assumption of federal jurisdiction here

---

Litigation acknowledged this commonality when it issued its conditional transfer order of this action and *Southern Collision* to the MDL, stating that the Attorney General's claims "involve questions of fact that are common to the actions previously transferred to the [MDL]." Conditional Transfer Order, *In Re: Auto Body Shop Antitrust Litig.*, MDL No. 2557 (J.P.M.L. Sept. 8, 2014). If the Court remands this action to state court, State Farm would be subject to potentially contradictory rulings and would be forced to litigate the same issues in multiple forums. *See Cajun Offshore Charters, LLC v. BP Prods. N. Am., Inc.*, No. 10-1341, 2010 WL 2160292, at \*2 (E.D. La. May 25, 2010) (recognizing that the "grave potential" for conflicting orders "poses not only a hardship for the defendants, but mocks an efficient and orderly judicial system."). In the event that conflicting orders occur, other insurers – not only State Farm – with claims pending against them in the MDL will feel the effects of a conflicting order. *See Tenn. Gas Pipeline Co.*, 2014 WL 2943602, at \*35 (finding that the federal issue was substantial, in part, because "it affects an entire industry, not just a few isolated parties.").

1172033v1

would upset the state-federal balance. *See Venable*, 740 F.3d at 941 (federal jurisdiction did not disturb state-federal balance where right to relief depended on the resolution of a substantial question of federal law that the district court could "'entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities'" (quoting *Grable*, 545 U.S. at 314)).

## CONCLUSION

For the reasons stated above, State Farm respectfully submits that the Attorney General's Motion to Remand should be denied.

Respectfully submitted this 17th day of October, 2014.

*/s/ Wayne J. Lee*
Wayne J. Lee, 07916
  wlee@stonepigman.com
J. Dalton Courson, 28542
  dcourson@stonepigman.com
Abigayle C. Farris, 33547
  afarris@stonepigman.com
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

And

1172033v1

Michael P. Kenny (Ga. Bar No. 415064)
 mike.kenny@alston.com
Tiffany L. Powers (Ga. Bar No. 586589)
 tiffany.powers@alston.com
Elizabeth Helmer (Ga. Bar No. 415161)
 elizabeth.helmer@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: 404.881.7000
Facsimile: 404.881.7777

*Attorneys for Defendants State Farm Fire and Casualty Company, State Farm General Insurance Company, and State Farm Mutual Automobile Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October, 2014, a copy of the foregoing Response Memorandum of Law in Opposition to the Attorney General's Motion to Remand has been served upon each counsel of record by notice of electronic filing generated through the CM/ECF system.

 */s/ Wayne J. Lee*
Wayne J. Lee

1172033v1