**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**STATE OF LOUISIANA,**

    **Plaintiff,**

**v.**                                                **Case No:   6:14-cv-6017-Orl-31TBS**

**STATE FARM FIRE AND CASUALTY**
**COMPANY, STATE FARM GENERAL**
**INSURANCE COMPANY and STATE**
**FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**

    **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Remand (Doc. 13) and accompanying memorandum (Doc. 13-1) filed by the State of Louisiana (the "State"), and the response in opposition (Doc. 19) filed by the three Defendants: State Farm Fire and Casualty Company, State Farm General Insurance Company, and State Farm Mutual Automobile Insurance Company (henceforth, collectively, "State Farm").

**I.   Background**

The State filed the instant case in the 19th Judicial District Court of the State of Louisiana on August 14, 2014, alleging that State Farm had engaged in a wide variety of misconduct to improperly lower the costs paid to auto repair shops, resulting in shoddy repairs and safety issues. Among other things, the State alleged that State Farm pressured insureds not to patronize auto repair shops that refused to go along with this conduct.

On September 3, 2014, State Farm removed this case to the United States District Court for the Middle District of Louisiana, asserting that the State's claims arose under Federal law. The

State then moved to remand, and State Farm responded. Before the Louisiana District Court resolved the motion, however, the United States Judicial Panel on Multidistrict Litigation transferred the case to the undersigned for consideration along with roughly two dozen other cases making similar allegations against various auto insurance companies. (Doc. 21). After the transfer, State Farm provided additional authority regarding the remand issue. (Doc. 25).

## II.     Legal Standards

Unlike state courts, federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). There is a presumption that a cause lies outside this limited jurisdiction, and the burden of proving otherwise rests on the party asserting jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936); *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir.2001). Removal statutes are to be construed narrowly, and where the parties clash about jurisdiction, uncertainties are to be resolved in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994); *see also Univ. Of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999).

Federal district courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Pursuant to 28 U.S.C. 1441(a), a defendant may remove from state court to federal court any civil action over which the federal district courts have original jurisdiction. A case "arises under" federal law where federal law creates the cause of action or where a substantial disputed issue of federal law is a necessary element of a state law claim. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9-10 (1991).

**III.    Analysis**

In its Complaint (Doc. 1-1 at 3-19), the State alleges that State Farm utilizes so-called "Direct Repair Programs" ("DRPs") – contracts between auto insurers and auto repair shops – and the threat of boycotting or exclusion from its list of recommended service providers to underpay repair shops and pressure them into using lower quality parts and foregoing needed repairs.   (Doc. 1-1 at 8-10).   Based on this conduct, the State asserts two claims:   In Count I, it alleges that State Farm's actions violated the Louisiana anti-monopoly statute, La.Rev.Stat.Ann. § 51:123; in Count II, the State alleges those actions violate the Louisiana Unfair Trade Practice and Consumer Protection Act ("LUTPA"), La.Rev.Stat.Ann. § 51:1401 *et seq*.   Although both of these claims are based on state statutes, State Farm asserts that they arise under federal law, giving the federal courts original jurisdiction under 28 U.S.C. § 1331 and permitting their removal pursuant to 28 U.S.C. § 1441(a).

State Farm bases this assertion on an agreement, known as the "1963 Consent Decree," which was entered into in 1963 between the Department of Justice and three trade associations, whose members, according to the State, "constituted the vast majority of insurers in existence at the time."[1]   (Doc. 1-1 at 5).   The State discusses the Decree in the following five paragraphs of the Complaint:

> In 1963, the United States Department of Justice filed a complaint and entered into a consent decree with three defendant trade associations, whose members constituted the vast majority of insurers in existence at the time.   (See Appendix A).
>
> The complaint alleged that through defendant trade associations and related committees, automobile property insurers conspired to

---

[1] A copy of DOJ's complaint in the 1963 case is attached to the Complaint as "Appendix A".   (Doc. 1-1 at 20-33).   A copy of the 1963 Consent Decree is attached to the Complaint as "Appendix B".   (Doc. 1-1 at 34-38).

> "depress and control automobile material damage repair costs." (Appendix A, p. 8, para. 17).
>
> The complaint described a system by which appraisers were controlled by defendants and related entities, and forced to follow a plan that strived to (1) repair rather than replace damaged parts; (2) replace damaged parts by used rather than new parts; (3) obtain discounts on new replacement parts; (4) establish strict labor time allowances by the sponsored appraisers; and (5) obtain the lowest possible hourly rate.   (Appendix A, p.9, para. 19).
>
> Furthermore, appraisers were required to enlist a number of repair shops who would agree to make automobile material damage repairs based upon the appraiser's estimate and to steer repairs towards those shops who would agree to such practices.   (Appendix A, p. 9, para. 20).
>
> Pursuant to those allegations, defendants entered into a consent decree with the United States Department of Justice for violations of Section 1 and Section 3 of the Sherman Act.   Under the consent decree, defendants were ordered to terminate their established plans to control the automobile material damage repair industry and depress its related costs, and were enjoined from placing into practice any future plans or programs which would have those effects.   (Appendix B, p. 2).

(Doc. 1-1 at 5).

In its prayer for relief, the State seeks the following:

> Wherefore, Petitioner prays that, in due course, the Court issue a permanent injunctive order against Defendants … to restrain, enjoin and prohibit Defendants from:
>
>    1.    Engaging in any activity in violation of the Louisiana Monopolies statutes, LSA-R.S. 512:121 *et seq.*;
>
>    2.    Engaging in any activity in violation of the Louisiana Unfair Trade Practice and Consumer Protection Law, LSA-R.S. 51:1401 *et seq.*; or
>
>    3.    **Engaging in activity that would be a violation of the 1963 Consent Decree;**[2]

---

[2] Section IV of the 1963 Consent Decree lists five types of behavior each defendant in that case is prohibited from engaging in, ranging from "(1) sponsoring, endorsing, or otherwise

- 4 -

> Through their use of direct repair programs and other methods of controlling and manipulating the automobile repair industry, including but not limited to the specific allegations herein.

(Doc. 1-1 at 18) (emphasis added).

Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.  *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 27-28 (1983).   State Farm contends that both bases for jurisdiction are satisfied here,[3] in that the 1963 Consent Decree gives rise to the State's cause of action and the State's requested relief necessarily involves resolution of a substantial issue of federal law – i.e., its terms.

State Farm is incorrect.   The State's causes of action do not "arise under" the 1963 Consent Decree.   The State never asserts that State Farm has violated its terms and, despite State Farm's repeated claims to the contrary, is not seeking to have it enforced now or in the future. Presumably this is because – as the State points out – neither it nor State Farm was a party to 1963

---

recommending any appraiser of damage to automotive vehicles" to

> (5) fixing, establishing, maintaining or otherwise controlling the prices to be paid for the appraisal of damage to automotive vehicles, or to be charged by independent or dealer franchised automotive repair shops for the repair of damage to automotive vehicles or for replacement parts or labor in connection therewith, whether by coercion, boycott or intimidation or by the use of flat rate or parts manuals or otherwise.

(Doc. 1-1 at 18-19).

[3] State Farm also asserts that this Court possesses jurisdiction pursuant to 28 U.S.C. §1337 but provides no support for this assertion.   (Doc. 19 at 5).

Consent Decree.   Regardless of the reason, however, it is clear that the State's claims for relief are based on alleged violations of Louisiana law rather than alleged violations of the 1963 Consent Decree.   Each count of the Complaint includes a listing of the ways in which State Farm has allegedly violated the Louisiana anti-monopoly laws (Count I) or LUTPA (Count II), such as "falsely leading consumers to believe that they cannot bring their vehicle to the repair facility of their choice" (Doc. 1-1 at 15) and "[i]nterfering with the judgment of collision repairers as to the manner, parts, techniques and necessary requirements to safely and properly repair consumers' vehicles" (Doc. 1-1 at 16).   Some of these (alleged) activities resemble those at issue in the 1963 case, but the State does not contend that they are improper *for that reason*, and the State does not contend that they violate the 1963 Consent Decree.

State Farm argues that the State's request for injunctive relief to prevent it from "[e]ngaging in activity that would be a violation of the 1963 Consent Decree" (Doc. 1-1 at 18) is an effort to enforce the decree.   But by its plain terms this request is not a separate cause of action; it is, simply, a remedy sought by the State in the event that State Farm is found to have violated either of the state laws at issue here.   It is not clear that the State would be entitled to this form of relief if it prevails on either of its state law claims.   But assuming *arguendo* that it is so entitled, this does not create a separate claim arising under federal law, or transform its state law claims into federal law claims.

The State's right to relief under either of its asserted claims does not depend in any way upon a finding of a violation of the 1963 Consent Decree.   And State Farm has not shown any way in which either of the State's claims depend upon the resolution of a substantial question of federal law, such as an interpretation the 1963 Consent Decree or the Sherman Act.   Accordingly, the State's causes of action do not arise under federal law, and removal was improper.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Remand (Doc. 13) is **GRANTED**, and this case is **REMANDED** to the 19th Judicial District Court of the State of Louisiana.   The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 18, 2015.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party